FRED BURKHARTH, Appellant, v. W. A. STEPHENS et al., Respondents.

Kansas City Court of Appeals, February 5, 1906.

1. DRAMSHOPS: County Court: Certiorari: Extent of Remedy. In granting a dramshop license the county court acts judicially and there is no appeal. The only remedy is by certiorari which only takes the face of the record up for review, and if that be regular there can be no interference.

2. COUNTY COURT: Judges: Liability: Corrupt Action. Members of the county court are judicial officers and are not civilly liable for their judgments, even though corrupt and wrongful.

3. ——: ——: Fraudulent Judgment: Bill to Set Aside: Parties. A bill to set aside a judgment of the county court because of fraud and corruption in its rendition does not seek to establish a liability on the judges, and equity has full power to declare such judgment void though clothed with legal form, and this without an allegation connecting the successful licensee with the misconduct of the court: and when the judges, wrong-

fully made parties defendant, do not take advantage thereof, they waive the misjoinder; and, *held*, on motion for rehearing, that the trial court may well dismiss such judges from the cause.

4. **DRAMSHOPS: County Court: Jurisdiction: Fraudulent License: Setting Aside.** A dramshop license issued when the county court has no jurisdiction is void; and the facts showing such jurisdiction may be gathered from the petition, application and the record; and such facts, though in truth they are not facts, cannot be inquired into on the question of jurisdiction; yet such facts can be shown in a proceeding in equity to set aside the license and the jurisdiction may be set at naught.

5. **Definitions: "Corruptly:" "Corruption:" Judgment: Officer.** Though the words "corruptly" and "corruption" may include a benefit within their meaning, they do not necessarily mean that the officer charged with doing an act corruptly did it for gain to himself; if he does an official act intentionally and knows it is wrongful and unlawful, he does it corruptly.

### On Motion for Rehearing.

6. **JUDGMENT: Setting Aside: Parties: Misjoinder.** In a bill in equity to set aside a corruptly-obtained judgment, the judges are not necessary parties, and such suit does not seek to cast any personal liability upon them and they may well be dismissed.

7. ——: ——: **Error: Purpose.** In a suit to set aside a judgment, mere error or mistake made by the judges, however gross, is insufficient; the wrongful and willful acts complained of must be committed on purpose and with the fraudulent view of accomplishing the wrong charged.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis*, Judge.

REVERSED AND REMANDED.

*Jas. A. Kemper* for appellant.

. (1) The respondent county court had no jurisdiction to hear and consider said petition, hence its judgment was and is absolutely void, and, if void, is no judgment at all. R. S. 1899, sec. 2997. (2) The action of the respondents was without jurisdiction

of the subject-matter and such being the case, they are not protected, but are liable to a civil action, even for damages. 12 Amer. and Eng. Ency. of Law (1 Ed.), pages 32 to 38 and notes. (3) It is alleged that there was a conspiracy between the respondents to do an an illegal and wrongful act which agreement was ministerial and for which they are liable, if the allega-tion be true. We had the right to establish the truth of the charge. 12 Amer. and Eng. Ency. of Law (Old Ed.), par. 6 on page 40. (4) It is alleged that the judgment herein was obtained by fraud and for this cause the judgment is open to attack in a proceeding of this kind. Higgins v. Peltzer, 49 Mo. 152. (5) Great and irreparable injury being alleged and all legal reme-dies being cut off by and through the fraud and corrup-tion of the said county court, this action became and was a necessity. (6) It cannot be contended that this proceeding is a collateral attack on the judgment of the county court, for such cannot be, as relates to a void judgment, it being no judgment at all. Besides it is a direct proceeding to vacate and annul. Higgins v. Peltz-er, 49 Mo. 152. (7) Appellant surely had a right of ac-tion against the respondent J. W. Garrison, and if it should appear that the respondent county court are not necessary parties to a proper determination of the mat-ter, this objection was waived and cannot avail to de-feat appellant's right of action against the respondent J. W. Garrison. Cooper v. Hunt, 103 Mo. App. 9. (8) If this action cannot be maintained against the respond-ent county court, said matter should have been raised by demurrer, setting up a misjoinder of parties. This respondents waived when they answered and went to trial. Bensieck v. Cook, 110 Mo. 173; Franke v. St. Louis, 110 Mo. 516. (9) This action is not for damages, not to punish the respondents; but merely to annul and set aside its fraudulent judgment and obtain relief from its consequences. Cooper v. Hunt, 103 Mo. App. 9. (10) The petition states good cause for equitable relief,

grounded in the conspiracy and fraudulent conduct of the respondents. Cooper v. Hunt, 103 Mo. App. 9. (11) The proceedings of inferior tribunals are open to review by courts of equity, and may be annulled and set aside when obtained by fraud and corruption. Pike v. Megoun et al., 44 Mo. 491. (12) The record of the county court is a shield and protection to the respondent Garrison against arrest and prosecution for violation of the dramshop act so long as it is permitted to stand.

C. E. Morrow and J. W. Suddath for respondents.

(1) The county court in granting the saloon license to defendant Garrison acted judicially. State ex rel. v. Fort, 81 S. W. 476; State ex rel. v. Heege, 37 Mo. App. 338. (2) The county court is a court of record. R. S. 1899, sec. 1580. (3) The judges of a court of record cannot be sued at all for their conduct in a cause, no matter how willful, malicious or corrupt. Stone v. Graves, 8 Mo. 148; Pike v. Megoun, 44 Mo. 491; Randall v. Bengham, 7 Wall. 523; Bradley v. Fisher, 13 Wall. 354; Austin v. Rooman, 14 L. R. A. 138, and note; 12 Am. and Eng. Ency. Law (1 Ed.), p. 39; 17 Am. Eng. Ency. Law (2 Ed.), p. 727; in Bradley v. Fisher, 13 Wall. loc. cit. 354, Justice Field says: "In granting dramshop licenses, the excise commissioner acts judicially and his finding of facts we understand to be conclusive. He must have jurisdiction before he can proceed; but he acquired jurisdiction in the present case, on the presentation of a petition reciting that the subscribers were a majority of the assessed taxpaying citizens and guardians of minors owning property in the block." Cooper v. Hunt, 103 Mo. App. 9; State ex rel. v. Heege, supra; State ex rel. v. Cauthorn, 40 Mo. App. 94; State ex rel. v. Co. Ct., 45 Mo. App. 387.

ELLISON, J.—This proceeding is a bill in equity, whereby the plaintiff seeks to set aside and annul a cer-

.tain judgment or order of the county court of Johnson county granting a dramshop license to defendant Garrison. The other defendants are the members of the county court of that county granting the license. The cause was taken by change of venue to the Lafayette Circuit Court, where, at the beginning of the trial, the defendants objected to any evidence being received on the ground that the petition did not state any ground for relief, or, in other words, did not state a cause of action. That objection was sustained by the trial court and plaintiff took a nonsuit with leave, etc. His motion to set aside the nonsuit being overruled, he comes here for relief.

The material portions of the petition are that plaintiff is a citizen of the city of Warrensburg and that he owns real and personal property in a certain block in said city, and that he suffers damage and injury to his property by reason of the county court granting a dramshop license to defendant Garrison to sell intoxicating liquors in said block. The petition alleges that, on the 20th of April, 1904, Garrison filed with the clerk of said court his application and petition for license, containing seventeen names. That there were thirty resident taxpaying citizens of Warrensburg (whose names are set out), who owned property in the block, who were entitled to be and should have been taken into consideration in passing upon the petition for license. That in passing on the petition for license, the court excluded three petitioners, leaving only fourteen to be considered in determining whether a majority had signed. The petition then stated the names of four others that were alleged not to be qualified petitioners, thus leaving only ten qualified names on the petition. The petition then alleges that the county court knew all these facts. That they knew that the names of the qualified petitioners on the petition did not compose a majority of the block. But, desiring to favor Garrison, they "knowingly, willfully, wrongfully, fraudulently and misfeasantly took

cognizance of his application" and granted him a dram-shop license. That they set out in the order or judgment that the court found that the petition was signed by a majority of the assessed taxpaying citizens and guardians of minors owning property in said block and that Garrison was a law-abiding taxpaying citizen above the age of twenty-one years.

It is then charged that the county court wrongfully and willfully counted the names of two persons on said petition for license, who had withdrawn therefrom. That when said application for license was before the county court, it was requested to determine what names were considered to be legal petitioners, but that the defendants knowingly, wrongfully, and on purpose, refused to determine and designate who were the assessed taxpaying citizens and guardians of minors owning property in the block and entitled to be counted as petitioners. That said court willfully and wrongfully refused to make any entries of record, from which it could be determined by what means or method it acquired the right to grant said license; thereby leaving the plaintiff without any remedy at law by which to review and correct the errors committed and the wrongs done. It is alleged that the license was renewed on said petition on the 9th of November, 1904. It is then charged that the acts and conduct of the defendants, in hearing, considering and granting said license to defendant J. W. Garrison, as well as renewing the same for another license term, was an act of misfeasance in office, was wholly without authority of law and void, and should be set aside; that neither an appeal nor a writ of error lies from such proceedings, and the defendants, the said justices of the county court, did willfully, wrongfully and on purpose, and with the view and purpose of preventing the same, so conduct, direct and record the proceedings had by them in said matter and cause, as to prevent a review thereof by certiorari, and thereby rendered the same unavailing.

It is charged that Garrison was operating a dram-shop under the license so obtained. It is then prayed that the judgment or order granting the license be set aside and annulled and the license cancelled.

In order to better understand the scope of the petition, it is perhaps well enough to state that the county court in granting a license acts judicially, and that from its decision there is no appeal. That the only remedy is by writ of certiorari, and that such writ only takes the face of the record to the superior court for review, and that if the face of the record appears regular, there can be no interference. [State ex rel. v. Moniteau Co. Ct., 45 Mo. App. 387; State ex rel. v. Fort, 107 Mo. App. 328.] Having these things in view, we see the object and purpose in the petition in the charges therein made. It alleges that the county court knew that there was not a majority petition for license. It knew that several of those appearing thereon were not qualified petitioners. That for the purpose of preventing any interference with their illegal conduct, they refused to find who were, and how many there were, of qualified petitioners in the block. That they refused to find how many of those signing the petition for license were qualified petitioners. That they refused to let anything get into the record, from which it would appear how they made their finding, and that all this was done wrongfully and willfully, for the purpose of leaving plaintiff and others without a remedy. It is charged that the conduct of defendants was a misfeasance in office; and was without authority. That neither appeal nor writ of error lies, and that defendants willfully, wrongfully and on purpose, to prevent a review of the proceedings by certiorari, did the things charged.

The defendants at the oral argument, and in briefs, took the position in support of their defense, that the members of the county court are judicial officers and that in the matter of granting the license they acted judicially. That judges cannot be held civilly liable to

an action for their judgments, even though they act corruptly, fraudulently and unlawfully, and willfully render a wrong judgment. That the only remedy against such officials is by removal from office or indictment. The liability of judicial and quasi-judicial officers is discussed by our Supreme Court in Stone v. Graves, 8 Mo. 148, and Pike v. Megoun, 44 Mo. 491. Interesting and instructive reviews of the subject are found in Bradley v. Fisher, 13 Wall. 335, and Lange v. Benedict, 73 N. Y. 12. In the former, a judge was sought to be held liable to an attorney, whose name he had stricken from the rolls, on account of the attorney having threatened him, during a recess of the court, with personal chastisement for an insult offered during the trial of Surratt for the murder of President Lincoln. In the latter, an action was brought against a judge of a United States circuit court for a sentence wrongfully and illegally pronounced against the plaintiff. In each case, it was held that the action would not lie. In the latter, various statements of the rule as made by different adjudications are given; and the court adds to these statements: "To be free from liability for the act, it must have been done as a judge, in his judicial capacity; it must have been a judicial act." And that is what defendants claim their act was in granting the license in question.

But, much as has been said on that subject, we do not consider it applicable to the case stated by the plaintiff. We do not put plaintiff's action with that class of cases bearing on the liability of judicial officers for wrongful acts done without, or in excess of, jurisdiction. The plaintiff does not seek to establish a liability against the county judges, or ask that they redress the wrongs he claims to have suffered by their conduct. He only asks that an order or judgment of a court, of which they were judges, be set aside and annulled on the ground that it was rendered wrongfully, fraudulently and without authority, for the purpose of clothing an illegal act with legal form. The power and duty of a court of

equity to set aside and declare void a judgment obtained through fraud, in a direct proceeding for that purpose, cannot be denied. [State ex rel. v. Zachritz, 166 Mo. 307; Irvine v. Leyh, 102 Mo. 200; McClanahan v. West, 100 Mo. 309; 1 Black on Judgments, sec. 321.] In Baldwin v. Davidson, 139 Mo. 118, a judgment obtained by collusion between the judge and one of the parties was held to be ground for setting it aside by bill in equity. And the right and power to set it aside was again asserted in Caldwin v. Dalton, 168 Mo. 20. So, where there was a fraudulent collusion with a justice of the peace, the judgment was set aside. [Kimble v. Short, 2 Kan. App. 130.] And so equity may enjoin the enforcement of a judgment when the verdict was obtained by the gross misconduct of the jury with one of the parties. [Platt v. Threadgill, 80 Fed. Rep. 192.]

The fraud generally appearing in litigated cases on this subject has been the fraud practiced by or participated in by one or the other of the parties to the controversy in procuring the judgment; while the wrongful acts charged here relate to the conduct of the court alone. But, manifestly, the mere source of the fraud and wrongful conduct, cannot affect, either the power, or the duty, of a court of equity to relieve against it. If a judge should be bribed to render a judgment, where there is a controversy as to what judgment should be rendered or a doubt as to the right to render it, would the circumstance that the bribe money was paid by some one not connected with the cause prevent relief to the party aggrieved? If a judge should try his own cause, concealed in another's name, could there be no relief? The mere asking of such question demonstrates that the misconduct of the judge is alone sufficient, upon which to ground relief, without allegation connecting the successful litigant with such misconduct.

It is suggested that, even though no civil liability is sought, yet judges should not be harassed with the

117 App.—28

defense of suits involving the propriety of their judicial acts. Conceding that it was unnecessary to make the county judges parties to the present action and that it could have accomplished the purpose sought by being instituted against the licensee alone, yet it was but a misjoinder of parties, which has been waived by defendants in failing to raise the point by demurrer. [Bensieck v. Cook, 110 Mo. 173.]

On a retrial of this cause, a question will, no doubt, arise and become a matter of contention unless we determine it now. It relates to the matter of jurisdiction of the county court to grant the license to the licensee. If it had no jurisdiction, the license is void. That that court had jurisdiction over the matter of granting dramshop licenses is, of course, not questioned. But did it have jurisdiction to grant the particular license in controversy? If the record of the court shows the necessary jurisdictional facts, then it had jurisdiction in the instance of this license. [State ex rel. v. Cauthorn, 40 Mo. App. 94; Cooper v. Hunt, 103 Mo. App. 9; State ex rel. v. Fort, 107 Mo. App. 328.] Matters which are alleged in the petition and application for license, or are set out in the record of the case as facts when in truth they are not, cannot (in the absence of fraud or corruption) be inquired into on the question of jurisdiction; for, to allow that power would be in the face of the law entrusting the determination of that question to the county court and giving to them original and exclusive authority to grant licenses, and from the exercise of which there is no appeal or writ of error.

But, where the court is faithless to such trust and is guilty of fraud or corruption in obtaining jurisdiction in a particular case, it may be shown in a proceeding in equity and the apparent jurisdiction set at naught. Thus, suppose a case pending in a court of general jurisdiction involved a matter belonging to a class of which the court had jurisdiction, and the judge and sheriff should fraudulently, or corruptly, conspire

that the record, including the sheriff's return should falsely show jurisdiction of the person. Such record would be said, in general terms, to be conclusive of the jurisdiction. But, when attacked in a direct proceeding in equity, in the absence of the rights of innocent intervening third parties, it would not be; more especially, if full and adequate relief could not be had an action against the sheriff. So, if in this case there were not a sufficient number of qualified petitioners, then it may be shown by any competent evidence having a tendency in that direction that the judges knew there were not. If, in truth, sufficient facts did not exist and (in the court's belief) were not made to appear to the court, false recitals in the record (including papers in the cause) will not suffice to bar relief. And evidence of any facts or circumstances tending to show the judges knew they were false is admissible, and, if established, should overthrow the license.

In the use of the words "corruptly" and "corruption," we do not mean them to be understood in the sense of bribery or other benefits received by the county judges. Those words, while including such benefit within their meaning, do not necessarily mean that the officer charged with doing an act corruptly did it for gain to himself. He may be guilty, though no personal advantage is thus received from the act. [Chicago Ry. Co. v. Olis, 192 Ill. 516.] If he does an official act intentionally and knows that it is a wrongful and an unlawful act, he does it corruptly. The word, or words, have been held necessary to a proper description of a charge against an officer in criminal proceedings for misconduct in office, but the cases so holding disclose that neither bribery nor personal gain was intended to be charged. [State v. Gardner, 2 Mo. 23; State v. Hein, 50 Mo. 362; State v. Pinger, 57 Mo. 243.]

We have not been cited to a case directly in point in its facts, though the views we have expressed are abundantly sustained on principle. The case of Cooper

v. Hunt, 103 Mo. App. 9, was not a decision of the points made in this case, yet we consider the evident leaning of the opinion therein to be in harmony with what we have written.

For the purpose of testing the legal sufficiency of the petition, we have been compelled to assume that the charges therein made are true. If, on a trial, the plaintiff substantiates the case stated, by evidence, it will be the duty of the trial court to set aside the order of the county court and annul the license. If he fails to do so, then the petition should be dismissed with proper entries.

The judgment is reversed and the cause is remanded. All concur.

### ON MOTION FOR REHEARING.

ELLISON, J. — Notwithstanding the foregoing opinion states, in terms, that the present case does not belong to that class wherein effort has been made to make judges of courts liable in damages for conduct in their judicial action; notwithstanding we put the ground of our decision upon the fact that the only thing sought by the petition is to set aside a judgment and not to make judges liable for rendering it; a motion for rehearing has been filed in which much undisputable authority is cited to the effect that it was against the policy of the law to hold judges of courts personally liable for their judicial action. If such was the object of plaintiff's bill, the authorities collected would be in point. But as nothing of that nature is asked they have no application. It also said that even if damages are not claimed, judges should not be harassed with necessity of employing attorneys and paying costs and thus have their minds distracted from official business. That, too, is conceded in the opinion. They were improperly joined with the licensee as parties defendant; but, as stated in the opinion, they waived

the misjoinder by not making proper objection. Since the judges are not necessary parties and should not have been joined, they should have raised the objection. If, when the case reaches the circuit court for trial they still fail to object, it would be well if the case was dismissed as to them.

The petition does not contemplate that a mere error or mistake was made by the judges; for error or mistake, however gross, could not affect the judgment. The petition charges and the proof must show, that unlawful, wrongful and willful acts were committed on purpose and with the fraudulent view of accomplishing the wrong charged. With the concurrence of the other judges, the motion is overruled.